Okay, Mr. Farrar. Thank you, Your Honor. May it please the court. As I was preparing for this case, I realized there's a lot of issues and arguments I was trying to be prepared for. My notes are a little longer than they are normally for an appellate argument. So I started thinking about it. I think, despite all these arguments and issues, at its heart, this is an equal protection case that does not involve a suspect or protected class. And therefore, the burden is on the plaintiffs to negate any conceivable, rational basis for the city's action. And in this case, the district court imposed that burden on the city, determined the city did not meet that burden, and then ordered interlocutory injunctive relief. And that's what brings us here today. Time permitting, I think there's three issues I would like to address. The first is this court's jurisdiction. And then whether or not this is a viable equal protection claim under the arguments under inquisitiveness on the cases following that. And then finally, the rational basis, again, that I just mentioned in my opening. First off, as I appreciate the plaintiff's argument, is that this is not, in this case, the order from the district court was not an injunction at all. But it's an order from the district court requiring certain actions from the city. I mean, that's the very definition of injunction. And, I mean, I just, quite frankly, I don't see any other way to interpret that order. It's an order compelling certain actions. And, of course, it's interlocutory. You call it akin to a preliminary injunction. I don't know that this distinction matters. But if anything, I mean, what else is left to be done in the district court? Why would it be a preliminary as opposed, in your view, to a permanent injunction at the end of a case? Your Honor, I believe that that was a distinction I didn't quite fully grasp. And if I had it to do over again in the briefing, I think I might change that. Because I don't think it really is a preliminary injunction. It's kind of like a preliminary injunction, but it's also kind of like a permanent injunction. It's preliminary in the sense only that it's really that it's interlocutory, that the case isn't yet over. But I agree with you, Your Honor, that besides the district court retaining the power in that injunction to review some of the city's ongoing actions, it's just a question of damages. That's the issue that's left. And so, in that sense, I think referring to it as a preliminary injunction was confusing and not quite precise. It is more akin to a permanent injunction in that sense. But the general elements of injunctive relief still apply. In a preliminary injunction, it's a likelihood of success on the merits. In a permanent injunction, of course, it's success on the merits. And well, briefly, I said I was going to talk about the court's jurisdiction. That's kind of, in my mind, kind of the scope of review of this order and whether it reaches back to the summary judgment proceeding. I think some of the cases that I cited in my Trap 28 letter — excuse me, FRAP 28 letter. I'm used to Texas proceedings. The — like the Munoz v. Guerin case from the United States Supreme Court, it talks about when there's a question of law only and the injunction rests on a question of law and it is plain that the plaintiff cannot prevail, in that case the defendant is entitled to judgment and the court is entitled to look behind the actual injunctive order to the basis for granting that injunctive relief because, of course, an injunction can't issue without the proper prerequisites, proper elements being met. Some of the other circuits that have dealt with this issue have imposed some slightly different elements, like an inextricably intertwined analysis. I believe, for example, the Eleventh Circuit, 454 Federal Appendix 776. This circuit in Alivi-Quarterman, 607 F. 3rd, 1046, says that our cases are inconsistent on whether there has to be this inextricably intertwined requirement. But in any event, I think that the Munoz v. Guerin and the Deckert, the older case cited in that, and those clearly stand for the proposition that the propriety of the injunction is at issue when you can appeal an injunction even though it is an interlocutory appeal. So the next issue I would like to address is this argument based primarily upon Inquist. I think in the Inquist opinion itself, the Supreme Court set up kind of two distinguishing factors from the earlier OLEC opinion. And those are, one, in OLEC, there was this kind of clear standard that applied to everyone, and so that any deviation from that standard gave a clear indication of differential treatment of the people within the community. And that's what raises this equal protections issue, whereas in Inquist, it was a hiring decision, and the Supreme Court recognized in that case there's a lot of kind of discretionary, subjective factors that are going to go into a hiring decision as opposed to a clear zoning standard, a clear requirement in that case. In OLEC, it was that 15-foot easement that was requested from everybody that wanted the service connected to their house, and then all of a sudden, Mrs. OLEC, they asked for a 33-foot easement, whereas in Inquist, it was this hiring decision, so much more discretionary. And I think, although the line drawn by the Inquist opinion is public employment, and this is not public employment, the plaintiffs were not asking to be hired directly as employees of the city of Fulcher, but I think if you had to put it on a scale of one of those, it's much closer to the Inquist fact pattern than it is to the OLEC fact pattern. And of course, cited in my brief, there's a number of cases from other circuits. I believe it's the Seventh Circuit in that Douglas Asphalt case extended that rationale to contracts with the government, which is as more akin to. And of course, in other contexts... Just help me conceptually here. Is this situation similar to or different from the latitude that a city has, let's say, to decide from whom to purchase vehicles or to decide with whom to contract for something like, let's say, cleaning services? Yes, I think it's much more akin to that than a hiring decision, but those two, it's purchasing services, so it would be more like the cleaning services. They're not purchasing any actual goods like vehicles. And of course, in certain circumstances, there's state law requirements for competitive bidding and all that, but in this particular context, hiring a towing company to perform the service of non-consent tows, there is no state statute that requires competitive bidding, and that seems to be the basis of the complaint in this case, that because there was no process up front, no competitive bidding, no list of criteria at the front end, that this is an arbitrary decision because there's nothing by which we can — against which we can judge it, and therefore, it is an equal protection violation. And there's nothing I've seen yet in the equal protection — I don't proclaim to be a constitutional scholar, but that requires every action, every purchase of a vehicle, every purchase of a janitorial service. If the sheriff's department ran out of — excuse me, the police department ran out of paper before their next shipment came in, and they had to go to one of the nearby office supply stores, does there have to be some kind of checklist before they make that decision? Because clearly, someone is getting the benefit of a government purchase in that case. And so, if there's no checklist and they go down first, under the order in this case, it seems to be an equal protection violation. But so, yeah, that discretionary versus a clear standard, I think, is one of the distinguishing factors that Inquis sets up from the OLEC case. And the other is the government acting as a regulator or as a consumer or a proprietor. And, of course, in OLEC, it was a regulation, it was zoning that applied equally to everyone. Here, there's no regulations, there's no licensing or fee requirement that the city has enacted that says, you know, all towing companies have to, you know, pay a permit fee to tow within our city limits to perform non-consent tows for our police department. Well, it might be different here if these were consent tows, right? It would involve a completely different, not completely different, but somewhat different considerations. I would agree, yes, Your Honor. And the main reason is the consent tow would be the owner of the vehicle is going to have requested it or at least consented to it. I mean, that's the difference, that the non-consent is the police have requested a record. Although the owner of the vehicle ultimately is going to pay for that service, it still doesn't change that into a regulation by the city. The city is not requiring these towing companies to, like I said, pay a tax, apply for a permit. And as this Court recognized in that court ordinal towing case, the city of Bedford, in that case, of course, it was not an equal protection claim. It was an interstate commerce claim. But the Court recognized that the mere fact that the owner of the vehicle was the one who ended up paying for the tow did not somehow remove this from kind of the city being the consumer of the towing services because it was the city who needs the vehicles off the road. It was the city who called the towing companies to get the vehicles off the road. And in that sense, it was a service for the city, although they didn't ultimately pay for it. And so I think that's the second example from the Inquist and the Inquist-OLEC distinction, that although there may not be a clear line on there, this case is much more on the Inquist side than on the OLEC side. The city was acting as a proprietor or a consumer. It was just trying to carry out daily city business. It did not enact a regulation that applied to everyone. It was just a decision on who to hire for these on-question tows. And so I think that the rationale in Inquist and the cases cited in the brief following it, that this indicates there's not even a viable class of one claim in this case. Briefly, I would like to touch on the rational basis I mentioned in the opening. Obviously, there were more raised in the summary judgment proceedings below, but the burden was on the plaintiffs to negate a rational basis. And I think reading the district court's opinion on summary judgment and, for example, the plaintiff's motion for summary judgment and reply, the complaint is that the city didn't establish a rational basis. And U.S. Supreme Court, the Norlinger v. Hahn case, the Inquist case from this court, that is the burden on plaintiff to negate it, not for the defendant, the city, to come forward and establish an actual, in fact, at the time the decision was made, rational basis. Not everyone may agree with that, but that's the law. And in this case, the district court imposed the burden on the city, complained that, you know, the chief had no standards until these companies badgered him. This shows an absence of regularity. The caprice of the police chief was all that counted. That is the depth of arbitrary government. That's the court's opinion on summary judgment. I believe it's 492 is where that opinion starts in the record. And that's simply not the burden on the city. And as I said, there were other rationales put forward in the motion for summary judgment. But I would like to very briefly mention two here today. I think the one is the plaintiff's lots are across a major highway, Highway 59, Interstate 69. And clearly, there's some geographical limits and, you know, topographical concerns, I think, that could serve as a rational basis. This is one of them. The plaintiff had the ability to negate that. In the reply, I believe the only evidence is that there's an overpass. They're not actually crossing a highway. They're only crossing over it. But I don't think that negates the rational basis, that it's still a burden on the citizens of the city of Fulshire who have to go retrieve their vehicles to potentially cross this busy highway, even though there's an overpass. There's still going to be traffic buildup and all that there. And I think that's a rational basis, even if there's 50 tow truck companies out there that could do this job for the city to say, well, we only want to pick two because, you know, you've got to oversee these people. You've got to deal with them and talk to them and take their phone calls. It's just ease of administration. Dealing with a small number of these is much less a burden on the administration at the city level. Yes, Your Honor, I believe that is a rational basis. And forgive me, I don't recall it off the top of my head. I think it's in my brief. There was, or perhaps it's in our motion for summary judgment, but below there's a Sixth or Seventh Circuit case that cited an equal protection claim on that very basis that, well, there was more to the opinion than just that, but that was one of the factors, that that was a rational basis for government to limit with whom it was doing business. The administrative cost or the administrative burden, I think, is the phrase from the opinion. Forgive me, I can't remember that site. I see my time's just about up here. I'm, of course, happy to answer any questions, but rather than start a new issue or a new line of argument, I'll reserve my time for rebuttal. Yes, you've saved your time for rebuttal. Thank you. Thank you, Your Honor. Mr. Mattel? Good morning. May it please the Court. I am here to present the jurisdictional argument. My co-counsel will present the equal protection elements. But as far as the jurisdiction goes, we believe that this Court does not have jurisdiction because it's, one, not a final judgment, and two, it's not preliminary injunctive relief. So what is it? Pardon me? What is it, then? We believe that it's just an equitable remedy under, essentially, under the Court's power under Rule 72, issue remedies to correct wrongs. But an equitable remedy is when a Court orders somebody to do something. Yes, sir. So, and essentially — Or not to do something. Pardon me? To do something or not to do something. Or not to do something, yeah. And, I mean, I guess, you know, for us, we believe that under the Swan v. Charlotte Mecklenburg case, the Court rationed that once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad for breadth and flexibility that are inherent in equitable remedies. Of course, that's a major desegregation case. Yes, sir. And that's kind of a different field of law. I mean, maybe there's specific language you can pluck from that. But, I mean, essentially, what we feel is that the Court looked at the facts, determined that the city of Fulcher came up with this criteria that they weren't necessarily following, and essentially ordered the city to comply with their own policies and rules, which included inclusion of Buentelo and integrity, ultimately. So that's why we think it's not injunctive relief, because of the fact that, essentially, the Court is saying that you have these policies, or you created these policies, why not follow them? Furthermore, we didn't, there's, the Court also rationed, or the Court also ruled that, ultimately, the city of Fulcher can come up with their own reasons for the towing rotation, which may or may not even include the plaintiffs. So, essentially, ultimately, they gave them their out, if you will, which may include whatever requirements they determined to create this tow rotation. So, we don't believe that it was injunctive relief, personally. So, when, if ever, can the city challenge or complain of what the District Court did or said? When? I mean, I think it'd be on a final judgment. We were at the final stages, like Judge Costa had asked, what's the remaining aspect of the litigation is, was the requirements issue. They, the city of Fulcher was supposed to submit requirements, and ultimately, that would have been fashioned into a final judgment, at which time they could have appealed the entire issue to this Court. But the relief that's been ordered was immediate, right? It was immediate, yes. So, they have to start doing or not doing whatever it is that the Court said, but they have no way of challenging that until? Well, yeah. Essentially, they, I mean, like I said, I think that our belief is that they were, the ruling would require them to follow their own rules and procedures. Essentially, there was a number of issues with the rationale that was given for exclusion of the plaintiffs. And therefore, the judge was essentially requiring them to follow their own requirements that they had provided to the Court. So, with that being said, we essentially believe that, you know, while the order does force some type of action, and it certainly is enforceable by contempt, which this Court has held would be akin to injunctive relief, we do believe that those two elements also apply to other aspects, like discovery disputes, in a sense. A discovery dispute forces someone to do something that they may or may not necessarily need to do, but again, and it's also enforceable by contempt. So, I would venture to guess this Court certainly does not want to hear all discovery disputes. And therefore, this type of remedy, this equitable remedy issued by the Court is akin to more or less a discovery dispute and would not be appealable until ultimately a final judgment has been issued. All right. Thank you, Mr. Patel. Thank you. Well, counsel, I'll let you pronounce your own name. I'm not even going to give it a try, if that's all right. Thank you, Your Honor. It's Sesha Kalapatapu. I'm joking. Mr. Patel can't pronounce it either, so it's fine. I'm here to argue the merits that Mr. Farrar mentioned. I did want to add to the Court, a writ of mandamus is always available. Our position is just that the actual relief that was ordered is more similar to an order of discovery. And nobody would argue that a discovery order is an injunction. So, clearly, the Court has authority to issue orders that compel somebody to do something that doesn't constitute an injunction. And I think that's where we lie. The order here doesn't compel them to issue new standards. It just says, tell us what your standards are, even if they're the same ones. And use your clients, put your clients on the list. But how is it in any way like a discovery order? And I think opposing counsel in citing that school desegregation case says it is an equitable remedy. So why is it discovery as opposed to a remedy? Only because what was ordered was for the City of Fullshire to follow its own policies and procedures. This was not, it's different from desegregation in that the desegregation cases, there was a finding that the policies were insufficient. They weren't meeting the needs of the African-American students. And so you need to desegregate immediately and come up with new policies and procedures in order to comply with Brown v. Board of Education. Here, the District Court specifically found that the towing companies did meet the requirements of the City of Fullshire. They evaluated the City's requirements and said, you meet the requirements, therefore they should be on the list. It's a little bit different from the desegregation cases in that respect. And it's closer, it's not a discovery order obviously, but it's closer in terms of what he ordered to the kind of relief you get in a discovery order compelling somebody to do something than it is certainly a preliminary injunction or even a permanent injunction. I think the Court within weeks would have issued a final judgment. Had they waited a couple of weeks, we might be in the same position. We've seen mandamus petitions on this Court multiple times where Judge Hughes has refrained from entering a final order for years. So I don't particularly accept your prediction that he would have issued something final fairly soon. Maybe he would have, but oftentimes he has not. I certainly accept that. On the merits, I think this case is an interesting cross-section of equal protection law. As Mr. Farrer mentioned, there's really only two cases in the last 20 years that talk about equal protection from the Supreme Court, OLEC versus City of Willowbrook and ANQUIS versus Oregon Department of Agriculture. OLEC stands for the proposition that if the government treats similarly situated people differently, it must have a rational basis for doing so. In my view, this is an extremely low standard. I mean, a rational basis is almost anything. And that's what the District Court said in its order. They could have chosen almost anything. The problem in this case is that they had no basis whatsoever. I mean, this is unique even among towing cases. The question I asked him, why isn't it a rational basis to say, we don't want to, you know, we have some rules these towing companies have to comply with. We don't want to ensure that 50 different companies are complying with our rules, so we're just going to pick two or three. Why can't they limit it to a small number just to make life easier for the city administrators? They absolutely could limit it. I think the District Court said, the District Court referred to limiting to two as administrative laziness, not necessarily rationality. But the evidence here showed that the police chief was willing to consider three. He didn't limit it to two for any particular reason. There was actually a third company he considered, but he just decided for whatever reason that he didn't want it. So there's no, even that wasn't a rational basis for the decision that was made in this case. But are you saying that the city has to articulate the rational basis at the time it makes the decision? No, what I'm saying is in this case, we went, we took the deposition of the police chief and we asked him every possible reason that he could have had for making the decision that he did. And every single one of them was discredited at some point. Did you, were you trying to limit it to two people? Well, no, I considered a third. Were you trying to restrict it to ten miles? No, because I, there's a neighboring city, the city of Katy is four miles away, but I discounted them. And one of the people that I selected was actually more than ten miles away. Did you consider the backgrounds? No, I didn't do any background checks. Every other towing case that I've found, and I'll be honest with you, there's not a single towing case where we win. It's not a great body of law for us. But every other case involves clearly articulated standards and people complaining about those standards. And they lose. Because there's almost any reason we'll justify a standard  Did Judge Lake just recently dismiss a similar towing protection challenge? He did. Right, and it was our two clients, Buentello, and the issue there was whether or not they were applying the standards equally because they had, the city of Sugarland had given some parties an ability to cure their deficiencies in their applications, and we felt that we could have cured as well if we'd been given that same opportunity. Judge Lake disagreed, and we chose not to appeal it for, the client chose not to appeal that decision. Here, there's absolutely no rational basis whatsoever for the police chief's decision making. And I think it's important to look at Enquist and understand, I mean, you can have two people who are similarly situated in terms of their resumes, went to the same law school, did judicial clerkships, but they're going to be two unique individuals. And they're not going to have the exact same employment pattern once they come to work for you. And I think the problem that Justice Roberts was talking about in Enquist is, there's no way to call individual employees similarly situated to other employees. It has to be an individualized decision. There's no such thing as a similarly situated employee in an employment context. The example he gave in that case of comparing it to a police officer who can see ten people speeding and has to pick one, in the moment, the rational basis for that, for the arbitrary decision of the policeman to select one car to pull over speeding, is that he can't pull over all ten. Even in these cases where they say the government has discretion, there's a rational reason for why the government needs discretion. This is not like those cases. You have plenty of time to come up with articulable standards to treat similarly situated people differently. All you need to do is spend that time and actually engage in that process. We're not asking them to put us on the program and Judge Hughes didn't order them to put us on the program if they articulated standards that we didn't meet. What cases do they have to articulate a rational basis as opposed to you showing that there could not have been a rational basis? I don't have that case, Your Honor. I do feel that if you look at the facts of the case, we disproved every rational basis that they could have possibly enumerated for the decision that was made. I think the other question that was asked was whether or not this is more along the lines of regulatory versus purchasing authority. Our position is it is actually more regulatory than they would suggest because one of the police chief's requirements was that his towing companies, the people on the record rotation could only charge what the county of Fort Bend also charged. He was regulating the prices. He didn't just delegate responsibility to the towing companies to set their rates and charge whatever they wanted to charge. They had to charge what Fort Bend County was charging. The other factor is there's no evidence that he gave these non-consent tow owners the opportunity to select their own towing company. It's not as if someone's about to get arrested and they get the choice to call the towing company and then he calls the record. This is unlike some of the other cases and I think there's one in the Fifth Circuit Cardinal Towing is the other case that was here. Cardinal Towing the non-consent tow occurred after the car owner had an opportunity to select their own and either was unable or unwilling. That's not the situation here. These cases are a little more closer to regulatory than they are to simple purchasing power and I would also say that every municipality handles record rotations differently so I don't think it would be right to make a blanket rule that any time a record rotation comes up there's never an equal protection case. Equal protection by its nature is their personal rights, their individual rights and you have to balance the rights of the individuals versus the needs of the government and I think rational review is a very fair balance because it's such a low standard. I'll close by saying that the purpose of government is to serve a public purpose at the end of the day and the distinction here that's unique from OLEC is that we're talking about the government selectively conferring benefits as opposed to imposing burdens. It's easy to see discriminatory animus or why was I selected for a burden as opposed to similarly situated people. Why am I paying a tax that they're not paying? Why am I not able to get my easement when they're able to get theirs? But equal protection should also apply to when the government selectively confers benefits to some of its citizens to the exclusion of others. Purchasing power there's a rational basis for why you need a low standard there but that's not exactly here where you have plenty of time, plenty of resources, plenty of ability to come up with standards that can serve the public purpose. If you don't do that then the small town government is able to have friends and acquaintances and that's not the purpose of government to allow people to abuse the public trust to the benefit of their friends and cronies. If there's not an equal protection case here where there were literally no standards that the police chief applied then I just don't see where there would be one almost ever in these kinds of cases. Thank you. Mr. Brower, you saved time for a bubble. Yes, thank you, Your Honor. I think there's a number of things I'd like to respond to. I'll try to keep it very brief. I think one of the first things Mr. Rattel said was that this is not a case of preliminary injunctive relief and that's why this court doesn't have jurisdiction. And of course the statute does not say preliminary injunctive relief. It says an order granting injunctive relief or that may not be the exact quote, please forgive me. And clearly this is an order granting injunctive relief whether it's temporary, permanent, something in between if it's injunctive relief the statute grants jurisdiction. And then I believe it came up in both sections of the argument that the court found, the district court found that the city developed these criteria but then did not follow them. But that is not the basis of the Equal Protection Claim. The Equal Protection Claim is that there were no criteria. That's repeated throughout like five or six times at least in their motion for summary judgment. I think it's page 15 of their brief. They said the appellants, the city misunderstands their argument. The gravamen of Appley's complaint is the utter lack of even the semblance of a process at all in connection with the creation of the rotation. So it's not that these criteria that were developed after the fact were not followed. That is not the claim that is brought here. And you know that actually serves as a basis for discrediting the city of lives. Oh these were after the fact they didn't really apply. If they didn't apply how can they be the basis of claim? And I don't think they can. That's not what was pleaded. That's not what was argued. That's not what was raised. Very briefly there was the argument that the city here, the chief does regulate prices but that's not the Equal Protection Claim either. It's not that one company is allowed to charge more than others or that the towing companies here were told they had to charge less than others. That's not the basis of claim. It's not an act of regulation. It's an act of consuming, of just running the city's day-to-day business. And of course I think the 7th Circuit has written on this issue a lot of you know what is the proper limit of an ELEC class of one claim. The 10th Circuit in, oh it's been a while now, 2004 Jennings v. City of Stillwater 383 F. 3rd 1199 mentions that this too broader reading of ELEC in a class of one claim would turn the Federal Courts into general purpose second-guessers of the reasonableness of broad areas of State action and local action and that's not the purpose of the Federal Courts. If there's an actual constitutional violation, of course, but not just second-guessing day-to-day decisions. If there are no further questions, thank you very much for your time.